FILED

2018 NOV 20 PM 1:41

U.S. DISTRICT COURT
N DISTRICT OF OHIO
CLEVELAND

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **INDICTMENT** |
| Plaintiff, | ) ) ) | 1:18 CR 701 |
| v. | ) | CASE NO. _____ |
| ERIC WITHERSPOON, | ) ) ) ) | Title 18, Sections 666(a)(2), 1343, and 1346, and 2 United States Code |
| Defendant. | ) | |

<u>GENERAL ALLEGATIONS</u>

**JUDGE LIOI**

At all times relevant to this Indictment, unless otherwise specified:

1. The City of Cleveland (hereinafter "the City") was a political subdivision within the State of Ohio.

2. Defendant ERIC WITHERSPOON owned and operated Arick's Environmental Management Services, Inc., and Arick's Services, Inc., (hereinafter, "Defendant's businesses"), which were asbestos removal and demolition businesses operating in the Cleveland, Ohio, area.

3. Defendant submitted bid proposals to the City in an attempt to obtain contracts for abatement and demolition work on behalf of the City.

4. Rufus Taylor (hereinafter "Taylor") (charged separately) was employed by the City as the Chief of the Demolition Bureau and was an agent of the City. Among other

responsibilities, Taylor was responsible for assigning "board-ups" to contractors for vacant and abandoned properties within the City, as well as locating contractors for and assigning emergency demolition jobs. Taylor also advised other City officials on which contractors should be solicited for bids on demolition jobs, to include emergency demolition jobs. Taylor was also responsible for conducting inspections and for supervising others conducting inspections, which had to be completed and passed before a contractor could be paid for a demolition project.

## COUNTS 1 - 7
(Honest Services Wire Fraud, in violation of 18 U.S.C. §§ 1343, 1346, and 2)

The Grand Jury charges:

5. The allegations contained in paragraphs 1 through 4 of this Indictment are incorporated by reference as if stated fully herein.

### THE SCHEME TO DEFRAUD

6. From in or around November 2013, and continuing through in or around September 2017, in the Northern District of Ohio, Eastern Division, Defendant ERIC WITHERSPOON devised and intended to devise a scheme and artifice to defraud and to deprive the City of Cleveland and the citizens of Cleveland of their intangible right to the honest services of Rufus Taylor (charged separately), a city official, through bribery.

### THE PURPOSE OF THE SCHEME

7. The purpose of the scheme was for Defendant unlawfully to benefit and enrich himself and Defendant's businesses through bribery of Taylor.

### MANNER AND MEANS OF THE SCHEME

8. The manner and means by which Defendant carried out the scheme included, but were not limited to, the following:

2

9. Defendant corruptly gave, offered, and promised things of value to Taylor, including multiple cash payments, to obtain official information and action favorable to Defendant and Defendant's businesses.

10. From time to time, Defendant and Taylor met at local restaurants, at job sites, and in parked cars to discuss Defendant's requests for access to information and action favorable to Defendant and Defendant's businesses. During some of these meetings, Defendant paid Taylor in cash.

11. Defendant made such payments to Taylor with the intent to influence, and in exchange for, official acts, including Taylor's own decisions and actions on matters, such as conducting inspections. Defendant also provided these payments to Taylor with the intent to influence, and in exchange for, Taylor's use of his official position to provide advice to other public officials regarding the solicitation and selection of contractors for demolition and abatement jobs for the City. Defendant and Taylor knew and intended that Taylor's advice would form the basis for official acts by other public officials.

12. Defendant also provided cash to Taylor with the intent to induce Taylor to act in violation of Taylor's lawful duty to the City and its citizens. Specifically, Defendant discussed with Taylor confidential information about potential board-up and demolition jobs in the City.

13. In order to conceal the scheme, Defendant instructed Taylor to keep secret the payments Defendant made to Taylor in exchange for Taylor's use of his official position to give Defendant and Defendant's businesses the opportunity to bid for certain City contracts or advise other public officials to do so, and in exchange for Taylor's use of his official position to award certain contracts and to select Defendant's businesses for certain City contracts, or advise other public officials to do so.

## ACTS IN FURTHERANCE OF THE SCHEME

14. The acts caused by Defendant in furtherance of the scheme included, but were not limited to, the following:

15. Beginning in or around November 2013, and continuing through in or around December 2015, Defendant paid, and offered to pay, Taylor sums of cash.

16. Defendant offered to pay and did pay Taylor money in exchange for non-public information about upcoming demolition jobs with the City, and for Taylor to use his official position to help ensure that Defendant would have the opportunity to bid on those jobs.

17. Taylor assisted Defendant in obtaining contracts with the City by including Defendant's businesses on the lists of businesses eligible to bid on certain jobs, and by advising other officials to include Defendant's businesses on the lists of businesses eligible to bid on certain jobs, in exchange for payments from Defendant.

18. Taylor agreed to provide, and did provide, assistance to Defendant in ensuring that work performed by Defendant's businesses would be quickly inspected after completion, in exchange for payments from Defendant.

### Premises 1

19. In or around November 2013, Defendant and Taylor met to discuss a demolition job at 887 Parkwood Drive, Cleveland, Ohio ("Premises 1"). Defendant agreed to pay Taylor $8,000 cash in exchange for Taylor getting Defendant on the bid list for Premises 1.

20. In or around November 2013, Taylor provided Defendant information regarding the Premises 1 job.

21. In or around November 2013, Taylor ensured that Defendant would be invited to bid on the Premises 1 job.

4

22. On or about November 11, 2013, Defendant submitted a bid, via e-mail, for Premises 1.

23. On or about November 12, 2013, the City awarded Defendant the demolition job for Premises 1.

24. On or about November 15, 2013, Defendant sent an e-mail to a City official, requesting partial payment for the work Defendant's business had performed at Premises 1.

25. On or about December 4, 2013, Defendant withdrew approximately $3,000 cash from a federally insured financial institution and gave that money to Taylor.

26. On or about December 4, 2013, Taylor deposited $3,000 in cash into his bank account.

27. On or about December 4, 2013, Defendant sent a City official, via e-mail, an invoice for the work Defendant's business had performed at Premises 1.

28. On or about December 9, 2013, a City official sent an e-mail to Defendant requesting another invoice for the work Defendant's business had performed at Premises 1.

29. On or about December 18, 2013, the City issued a check to Defendant's business for approximately $81,541.00, which represented partial payment for the work Defendant's business performed at Premises 1.

30. On or about February 13, 2014, Defendant sent a City official, via e-mail, a final invoice for the work Defendant's business had performed at Premises 1.

31. On or about April 28, 2014, Defendant sent an e-mail to a City official inquiring when Defendant would receive the full payment for the work Defendant's business had completed at Premises 1.

32. On or about May 8, 2014, a check was mailed from the City to Defendant for the work Defendant's business performed at Premises 1.

33. At various other times between November 2013 and November 2015, Defendant gave Taylor an additional $5,000 in cash.

### Premises 2

34. In or around October 2015, Taylor notified Defendant about an emergency demolition job on East 123rd Street and 1885 Coltman Avenue, Cleveland, Ohio ("Premises 2") and provided Defendant with information about the Premises 2 job. Taylor instructed Defendant to contact the City so that Defendant's businesses could be placed on the bid list for Premises 2. Defendant agreed to pay Taylor $12,000 in exchange for notifying Defendant about the emergency demolition job.

35. In or around October 2015, based in part on the information provided to him by Taylor, Defendant's business was awarded abatement work for Premises 2.

36. In or around October 2015, Defendant completed emergency demolition services at Premises 2.

37. On or about October 28, 2015, Defendant sent a City official, via e-mail, the initial invoice for the emergency debris clean-up work that Defendant's business had performed at Premises 2.

38. On or about November 28, 2015, Defendant sent a City official, via e-mail, a proposal for the completed emergency debris clean-up work at Premises 2.

39. On or about November 30, 2015, Defendant sent a City official, via e-mail, the proposals for work at Premises 2.

40. On or about December 8, 2015, the City issued two checks to Defendant, totaling approximately $94,640, for the emergency debris clean-up work that Defendant's business performed at Premises 2.

41. For reasons beyond Taylor's control, Defendant's business was not awarded the full scope of work at Premises 2, and Defendant never paid Taylor the $12,000.

## The Execution of the Scheme

42. On or about the dates set forth below, in the Northern District of Ohio, Eastern Division, and elsewhere, Defendant, for the purpose of executing the above-described scheme and artifice to defraud and deprive, transmitted and caused to be transmitted by means of wire and radio communication in interstate commerce the signals and sounds described below for each count, each transmission constituting a separate count:

| Count | Date | Description | Originating E-Mail Account Server Location | Receiving E-Mail Account Server Location |
|---|---|---|---|---|
| 1 | 12/4/13 | E-mail from Defendant to City official with subject line "887 Parkwood," with attachments | Aol.com server located in Virginia | City of Cleveland server located in Ohio |
| 2 | 12/9/13 | E-mail from City official to Defendant with subject line "887 Parkwood" | City of Cleveland server located in Ohio | Aol.com server located in Virginia |
| 3 | 2/13/14 | E-mail from Defendant to City official with subject line "Invoice 887 Parkwood," with attachment | Aol.com server located in Virginia | City of Cleveland server located in Ohio |
| 4 | 4/28/14 | E-mail from Defendant to City official with subject line "Invoice 887 Parkwood," with attachment | Aol.com server located in Virginia | City of Cleveland server located in Ohio |

7

| 5 | 10/28/15 | E-mail from Defendant to City official with subject line "1862 E. 123rd St, 1885 Coltman Intial [sic] Billing," with attachment | Aol.com server located in Virginia | City of Cleveland server located in Ohio |
|---|---|---|---|---|
| 6 | 11/28/15 | E-mail from Defendant to City official with subject line "Re: Formal proposals and notifications," with attachment | Aol.com server located in Virginia | City of Cleveland server located in Ohio |
| 7 | 11/30/15 | E-mail from Defendant to City official with subject line "1862 E. 123rd Street and 1885 Coltman Ave Proposals," with attachments | Aol.com server located in Virginia | City of Cleveland server located in Ohio |

All in violation of Title 18, United States Code, Sections 1343, 1346, and 2.

### COUNT 8
(Bribery in Federally Funded Programs, in violation of 18 U.S.C. § 666(a)(2))

The Grand Jury further charges:

43. The allegations contained in paragraphs 1 through 4 and 7 through 33 are incorporated by reference as if stated fully herein.

44. During the one-year period beginning on or about November 1, 2013, and ending on or about October 31, 2014, the City of Cleveland, a government organization as defined by Title 18, United States Code, Section 666(d)(2), received benefits in excess of $10,000 under a Federal program involving a grant, contract, subsidy, loan, guarantee, insurance and/or other form of Federal Assistance.

45. From on or about November 7, 2013, to on or about October 31, 2014, in the Northern District of Ohio, Eastern Division, Defendant ERIC WITHERSPOON did corruptly give, offer, and agree to give a thing of value to any person intending to influence and reward an agent of a local government and an agency thereof, in connection with any business,

transactions, and series of transactions of such local government and agency involving something of value of $5,000 or more, to wit: Defendant gave, offered, and agreed to give Rufus Taylor, a public official with the City of Cleveland, approximately $8,000 cash in exchange for Taylor helping get Defendant on the bid list with the City of Cleveland for a demolition job at Premises 1, which assisted Defendant in winning a contract for work at Premises 1, a job valued at approximately $147,000.

All in violation of Title 18, United States Code, Section 666(a)(2).

Count 9
(Bribery in Federally Funded Programs, in violation of 18 U.S.C. § 666(a)(2))

The Grand Jury further charges:

46. The allegations contained in paragraphs 1 through 4, 7 through 18, and 34 through 41 are incorporated by reference as if stated fully herein.

47. During the one-year period beginning on or about October 1, 2015, and ending on or about September 30, 2016, the City of Cleveland, a government organization as defined by Title 18, United States Code, Section 666(d)(2), received benefits in excess of $10,000 under a Federal program involving a grant, contract, subsidy, loan, guarantee, insurance and/or other form of Federal Assistance.

48. From in or around October 2015, to in or around November 2015, in the Northern District of Ohio, Eastern Division, Defendant ERIC WITHERSPOON did corruptly give, offer, and agree to give a thing of value to any person intending to influence and reward an agent of a local government and an agency thereof, in connection with any business, transactions, and series of transactions of such local government and agency involving something of value of $5,000 or more, to wit: Defendant offered and agreed to pay Taylor approximately $12,000 cash in exchange for Taylor providing Defendant with non-public

information about emergency work at Premises 2 and otherwise assisting Defendant in winning a contract for work at Premises 2, for which the City paid Defendant approximately $94,640.

All in violation of Title 18, United States Code, Section 666(a)(2).

A TRUE BILL.

Original document - Signatures on file with the Clerk of Courts, pursuant to the E-Government Act of 2002.